United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Morning ladies and gentlemen. Welcome to the Ninth Circuit. We have first of all Judge Forrest and I want to express our appreciation to Judge Paul Kelly from the Tenth Circuit Court of Appeals who is sitting with us today by designation. We're grateful for his volunteering to help us and for his service. We have two matters that we will now submit. They are Martinez Ramirez v. Garland and Cutler v. Garland. So those matters are now officially submitted and we'll begin with argument in the case of Abadei v. Garland and I believe Ms. Szepanski is the representative petitioner. I'm probably pronouncing that incorrectly. I apologize. Please proceed. Thank you your honor. Good morning. May it please the court. My name is Katie Szepanski and I represent petitioner Charles Abadei. I will reserve three minutes of my time for rebuttal. Mr. Abadei presented at the southern U.S. border to seek protection from return to Cameroon and was interviewed. He later passed a credible fear interview and applied for asylum before the IJ while pro se and detained. The immigration judge found Mr. Abadei's testimony not credible because he one confused but later corrected and clarified his prior date of departure from Cameroon and two because the border interview record only mentioned one of two prior visa denials and did not mention the use of a false name in connection with one of these applications. These inconsistencies on the record under a totality of the circumstances and relevant factors did not warrant a negative credibility finding. Counsel let me let me ask you this. Let's state for a moment that the first part is something I probably agree with you on but I'm really troubled by the fact that the petitioner lied under oath in documents that he signed about the other two matters. Is that a prima facie basis on which to find adverse credibility? No your honor. So regarding the the record of the informal interview that does have Mr. Abadei's signature on the bottom. The IJ treated this border interview record as a transcript rather than a summary and afforded it improper weight. Let's let's let's assume it was a summary. He signed it. He signed it not only signed it he signed it under oath did he not? He did and during his testimony he initialed each page correct. He said he had never he didn't see it never had a chance to look at it. Yes Mr. Abadei testified that he did not have an opportunity to review the answers in the document and further Mr. Abadei believes that he did inform the border officer that he had used a prior name and perhaps the officer did not understand him when he told him about the second visa. But with respect that's what you're basically saying about everything. I didn't understand this. I didn't understand that and maybe it works with respect to some of it but as we've discussed with respect to these border documents he initialed each page. He signed each page and he was signed it under oath. I mean you know as a in a court of law let's just say that somebody came down here and signed a document we'd have a little trouble uh saying what gee I don't know what I was doing I didn't look at it. Isn't there some burden on the part of your client to take responsibility for something he does in connection with the service? Yes your honor and and during his testimony he did he did state that he thought he told the officer this and he said um you know maybe the officer didn't understand me or he didn't understand. But with respect again you're a good lawyer you know people will say all kinds of things but basically he's deflecting everything. I didn't do this. I didn't understand that. I told him this. I told him that but he didn't write it down. He didn't make any exception to that when he reviewed the pages initialed them and signed them under oath. Now I guess my question boils down to the fact is you know even if we cut him some slack with respect to the first portion of the documentation I'm really troubled by this border documentation and I don't think the fact that he said later on oh I told him that really overcomes his uh adverse credibility problem. What am I missing? Um so Mr. Abagay did um spontaneously admit to the use of this false and and posing with or applying for these visas um prior to the final hearing as well. Isn't isn't that in and of itself an illegal act? Making a claim under a false name? So um under under established precedent though an individual may um this court has held that an individual may need to provide false information or submit false applications to Cameroon in this case. I get that if he were trying to get out of Cameroon false I get it there are some cases that back that up but we're not talking about Cameroon here we're talking about the United States of America. He's here he makes false claims uh you know you I'm sure you've seen these before we get people all the time say well I was married I did this I did that and it's false uh and if they sign it under penalty of perjury it's a problem and indeed it is sometimes uh just completely disqualifying uh in this case may not be that but why doesn't it go to the adverse credibility issue? It doesn't go to the adverse credibility under the totality of the circumstances because Mr. Abagay later clarified this and made um he made admissions to these two visas and his use of a false name even in a hearing prior to his final hearing um he made no attempts to evade these questions or mislead the IJ when he was questioned about it in his testimony and he confirmed. Counselor excuse me what is our standard of review here? Yes so here credibility determinations um are made and must be reviewed um based on a totality of the circumstances and all relevant factors not a single factor um this was um recently established under a Long Beach Garland or clarified by this court um and that court held that there is no bright line rule um to the certain number of inconsistencies um that are needed to uphold or reject an adverse credibility of finding um the determination should require assessing the totality of the circumstances. Well do we owe any deference to the uh IJ? There is some there the this court um may address the IJ's decision however um under established case law as well the IJ erred as a matter of law in failing to provide those reasons um cogent reasons for rejecting these these explanations for the inconsistency um so the IJ didn't even provide those explanations so the board didn't have the opportunity to review the IJ's reasoning for rejecting these inconsistencies for the explanation for the inconsistencies. Was it your position that the IJ had an obligation to explain why if your client lied under oath uh under penalty of perjury signing these documents initialing these documents he had to explain why that went to adverse credibility? Well here the IJ's responsibility was to address to address why she um rejected the reasonable or plausible explanations that Mr. Abajay provided so he did state that he believes that the officer he told the officer this and the IJ did not um provide an explanation for rejecting. So no no no and again I'm not suggesting this is the case with your client but let's just say your client says uh I was accosted by Martians and they told me to say this does the IJ have to respond to that? So the IJ must provide a reason for rejecting that explanation from with the Martian example? Because it is still yes your honor because it is still plausible that the the respondent believes that to be true. That's interesting that takes us to a whole new level um it's a twilight zone. Um so thank you your honors I noticed that I have two minutes um I would like to want to save your time thank you that'd be fine let's hear from the government. May I please the court your honor um good morning Joanna Watson on behalf of respondent the United States Attorney General and under the totality of the circumstances um substantial evidence supports the agency's outburst credibility determination and I know a lot of the focus has been on the omissions at the border and I'll get to that but I I really want to go over the um the the inconsistent testimony about the second time that Mr. Abishai left Cameroon. I mean this this wasn't a situation where he said one time an incorrect date and fixed it he the immigration judge provided him six or seven opportunities to provide the date that he had previously provided he he had stated in his declaration that he had left in April of 2019. But the immigration judge asked him the first time he asked him and Mr. Abishai responded that it was December 2016 and then a second time the IJ said December 2016 and he confirmed that that was the date and then another time he asked him again whether the second time he left was in December 2016 and then he even pointed out that where would he have been between December 2016 and when he arrived in United United States in 2019 and that's when he went into the discussion of being in yonde and he was repeatedly again you know the immigration judge pointed out the confusion that you know um on the record at AR 146 147 he says I have some confusion then the first time I asked you when you left Cameroon the second time you just you told me December 2016 and then the second time you said December 2018 and now you're telling me that you're arrested in December of 2018 and held for five months and this is a huge discrepancy here because if it was December 2016 when he initially said or December 2018 he would have already departed at the time that he claims that he was detained so I mean I know that I recognize in the 28 day under allum that the court is not required any longer the one factor rule is no longer in play but there's no bright line rule and this is a huge discrepancy here in dates and when you have that on top of the omissions that were made at the border and to that matter when you're talking about an immigration judge um providing an opportunity to explain omissions or inconsistencies that can happen through cross-examination and that's exactly what happened here when the government attorney asked Mr. Abagay about the omissions and he confirmed that his initials were on the pages of the that interview that he initialed every page and that he signed every page and that so can I go back to the Cameroon inconsistencies for a minute yes your honor as you look at the record it's hard to see how he really benefited from the inconsistencies that were in that uh explanation or those various explanations does it matter for purposes of making an adverse credibility determination whether the inconsistencies would or would not have been helpful to the petitioner in this case I'm not quite sure I'm understanding okay the question how they wouldn't how it wouldn't matter that he wouldn't he couldn't have already left let's just say that he misrepresented several things uh but the fact is the reason he came here he said persecuted and the like and and he wants to be believed but say that say that he said you know I I couldn't go because I couldn't get kool-aid or I couldn't go because my mother wanted me to have dinner with her or whatever a whole bunch of things that had absolutely no impact on the case can an IJ still make a an in I mean an adverse credibility determination based upon inconsistencies that that are not material to the issues before the agency under the real idea act it's a totality of the circumstances and you can it can rely on any inconsistency or omission but of course inconsistencies and omissions that go to the heart of the claim are going to have are going to weigh more but you can still look at any inconsistencies but this this particular one where you know you only left Cameron twice and he gave inconsistent dates repeatedly until the immigration judge pointed out that you wouldn't have been detained you couldn't have been detained if you had left in December of 2018 because he claimed in his declaration that he was detained from December of 2018 until April of 2019 and then he left for the United States after being released so I mean that was a huge that's a huge factor here and you know there's no bright line but on how many factors but this one is this pretty large on top of the fact that the omissions that were made at the border as well which do you think is more important uh the fact that he lied about being married and having a job in the in one of his applications uh or the fact that he was confused if you will uh or that he initialed each page and claimed he didn't read any of it uh did you just put them all together and come up that's exactly that's why it's the totality of the circumstances and there's not in and in the court and all them said that you know there's no longer you know one factor substantial evidence supports this one factor you know the court's not required any longer you you mean it's not saying that one factor isn't going to be won't ever be sufficient just saying that you look at the totality of the circumstances and when you look at this totality you know it supports the adverse credibility determination when you look at all these factors particularly so i wouldn't say that one more than the other and in and looking at you know the the false visa in cameroon the the omissions he made he says that he got one he he tried to get one visa but was denied and then you know he said that he never used a false name but we don't we don't even know which visa he's talking about when he says that he only got one whether he's referring to ones for college or the other one in this case counsel would you address the cat claim uh in my review of the record i don't see that the agency addressed the country conditions that were a part of the record and i'm just wondering under our case law whether we have to remand for it to do that um because there's no reference to it that i see there wasn't a whole lot of reference i mean the immigration judge discussed the evidence that was in the record and you know it shows that he looked at at the country reports and everything i think at the beginning of the decision it goes over the exhibits and everything but i read that whole transcript and i saw at the very beginning because the ij's decision was an oral decision so it's a transcript i saw at the very beginning of that that there's basically the list here's exhibit one and here's exhibit two and here's exhibit three i didn't see anything in there about and i've considered all of these things and there certainly i didn't see any specific discussion of you know i've looked at the country information of record and i find it unpersuasive or whatever so can you give me a record site that shows that the ij did something more than just list that it was in the record hey it doesn't go into a lot of detail about the country conditions because the denial of cat is primarily based on the adverse credibility determination immigration our case law says that even if you have somebody who is deemed not credible if there's relevant country conditions in the record that the agency still has to look at that because you can have a cat claim even if somebody's not credible right correct that it that is correct but it goes to like that when you're looking at past torture if you're found not credible then you know you look at the ij looked at in terms of there was nothing in the record to show that the government had any interest in him because he testified that when he was released from custody that second time he didn't have to report again and that the government was fully aware that his brother was in spain and you know he wasn't a member of of the party that his brother was a member of and there there's just there's nothing in the record to show that anybody had any interest in him when he returned were you suggesting that when it's not relevant that you don't really need to worry about well i mean there's between the average credibility determination and no evidence it's more likely than not that that information in the record that shows that not the best conditions in the country but you have to show under your specific situation that it would be more likely than not that you'd be tortured by the government or with the acquiescence here's the scenario that i've here's the scenario that i can't figure out how we resolve it it could be i don't read the agency's decisions even though they find him not credible i don't read those decisions as them concluding that his family wasn't a part of this political this disfavored political organization so he was found not credible on some things but it's not like every single thing he said they didn't believe um i just don't think i can read the record that way so if i if it's true that we that the agency was accepting that his brother and father had this connection to this political organization um even without specific evidence that they're actively looking for him now there could be information in country conditions reports that say that people associated with such a political organization are being treated unfavorably so i'm back to isn't it possible even if they don't believe everything he said about what happened to him personally that there's enough in this record to say he's connected to some sort of political disfavored political organization that he might have trouble and we would need to the country conditions well i mean when you have that first credibility determination that's here i mean it's so is your reading of the record that the the agency concluded that his brother and father weren't even connected to that organization is that your reading of the record oh they were they didn't explicitly say that but they didn't explicitly say that you know they they believed that they were members of this party and believed any parts of his story because of the inconsistency during his testimony and everything it cast out on everything we've gone over time but i we can always ask questions and i i i am concerned about this um the country reports are usually if you will documents that can be used as documents of advocacy by the petitioner but the petitioner in order for it to be useful has to point out in the country report what it is that the petitioner thinks would benefit him or her the government on the other hand usually uses these as a way to say there's you can relocate somebody within the country and get away without having a cat relief granted in this case does the record reflect that the petitioner cited something in particular in the country report that would be beneficial to as opposed to saying there are gangs everybody from central america says there are gangs and the country reports say that but it doesn't help them because they have to particularize it with respect to their own situation is there anything in this record that suggests that the petitioner met his burden to show that the country report would be of assistance to him and if so did the agency respond to that specific uh allegation i mean the records are in here but there he didn't have very much of an argument for his cat claim except for that he was allegedly detained and harmed while he was what i'm asking is did did he cite anything in the country report there was something there that buttressed his claim no i there's no citation to the country reports and and the opening brief is that relevant or is that required in order for him to benefit from the uh agency's bia in this case well it's his failure to address it it's his burden to show that he warrants protection and it's a it's a it's a large heavy burden it's i understand that what i understand what my question is is so there's an there's a country report in every every case has country report most of them are absolutely no worth we don't deal with them we don't touch them unless somebody comes forward and says this condition in the something in the country report that said that effect may be affected him and if he did is there a failure on the part of the bia or the ij to address that well again the country reports or are you're speaking in terms of an appeal to the board or during i mean i'm just saying it in this in this proceeding if the country report was there did the did the petitioner cite something specifically in the country report that he felt was beneficial to his case doesn't point to anything in the opening brief and there was a minimal argument in his appeal to the board regarding what was that argument what was that argument with respect to the country report do you not have the appeal brief with me i believe it was primarily again what happened to him and then it would happen again because well so you're saying basically you don't know for sure about that question right i could submit a 28 day oh i understand that yeah but i'm just saying right now you don't know okay um do either of my colleagues have additional questions with the court and i don't want to say something that i can't be definitive about understand do either of my colleagues have additional questions for the government okay very well let's let's go back then to council for petitioner please proceed thank you your honors um i'd quickly like to address um the issue of the dates of departure um that were addressed in mr abajay's testimony um the event in his testimony was the first instance of this date confusion um and what has otherwise had been a consistent detail in his record um he gave the same dates in his border interview in the credible fear interview in his sworn i-589 and his declaration and it from the several months that he entered the united states and appeared before the immigration judge he had provided the same dates um it was only um only at after four months of of being detained and did he make that mistake but then corrected it provided um the date of april 9th or april 2019 um twice to the immigration judge and the immigration judge did not inquire for an explanation for the confusion or um give a reason for rejecting mr abajay's correction of this date opposing counsel suggested that uh your client uh said he was he was departing when he also said he was being detained in cameroon did i misunderstand that no your honor so at first mr abajay confused the dates 2016 and 2018 and then when the judge asked to clarify um mr abajay explained um it was 2018 december 2018 when he was arrested and was released from the custody on april 2019 in which he fled the very next day or perhaps the same day um so he was confusing the date of his arrest with the date of his departure now opposing counsel suggests that the ij had given your client repeated opportunities to correct the record and the more he said the more confused it got that's what i understood her to say what's your response to that um well my response is that mr abajay did correct the record um he did he corrected it said april 2019 and actually further along in the proceedings when the judge asked him again what was the date that he fled he said april uh april 9th of 2019 um so he actually said the correct date twice in his testimony as well the second time um without an error was on page 156 of the transcript um i can um briefly briefly conclude um your honors um we're over time so let me ask my colleagues whether either has additional questions for the petitioner's counsel all right thank you both for your argument in this somewhat confusing case so we appreciate that and the case just argued is submitted
judges: Kelly, SMITH, FORREST